

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
~~XXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

Hon. Lee Brady
Banking Commissioner
Austin, Texas

Dear Sir:

Opinion No. O-2714
Re: Security deposited under trust
indenture is for benefit for Texas
certificate holders.

For a full understanding of the problems involved in
your inquiry of January 10, 1941, we deem it essential to here
set out your request in full:

Investors Syndicate is a Minnesota corporation au-
thorized to do business in Texas under Section 48 of
Article 1302, and is subject to the provisions of Sen-
ate Bill 165, Acts of the 45th Legislature, commonly
known as the Loan and Brokerage law.

"On January 19, 1932, the Investors Syndicate, on
one part, and Guardian Trust Company as Trustee, on the
other part, executed a trust indenture, a copy of which
is hereto attached. This indenture was approved by the
Banking Commissioner on June 20, 1932. Pursuant to this
indenture the Investors Syndicate sold bonds of the char-
acter attached to the original trust indenture, both in
Texas and in most of the other states in the Union.
Seemingly, the Investors Syndicate construed this trust
indenture to secure the payment only of the bonds sold
in Texas, despite the fact that bonds identical in every
respect were sold elsewhere. Following that construc-
tion the Investors Syndicate deposited with the Trustee,
under this indenture, collateral equal only to the with-
drawal value of bonds sold in Texas.

"On August 28, 1934, Investors Syndicate prepared,
and caused to be approved, by the Banking Commissioner,
its '10 year coupon and annuity certificate' and its '10
year-single payment certificate', copies of which are
hereto attached and marked 'Exhibits A & B'. Bonds iden-
tical to these exhibits were sold both in Texas and in
other states, but the Syndicate construing the indenture
to secure only those bonds of this type sold in Texas,
maintained with the trustee collateral equal only to
the withdrawal value of the bonds sold in Texas. At an
undetermined date the Investors Syndicate prepared, and
had approved by the Banking Commissioner, its '10 year

coupon certificate', '10 year coupon and annuity
certificate', and '15-year installment investment
certificate', copies of which are hereto attached
and marked respectively 'Exhibit C, D & E'. These
certificates were likewise sold both in Texas and
in other states and the Syndicate has maintained
collateral with the Trustee only to the extent of
the withdrawal value of the bonds of this character
sold in Texas.

"On July 6, 1936, Investors Syndicate prepared
and caused to be approved, its '10 year single pay-
ment certificate', '10 year coupon and annuity cer-
tificate', and its 'investment contract', copies of
which are hereto attached and marked respectively
'Exhibits F, G, & H'. These last three bonds are
generally referred to as 'Series M bonds'. You will
note the printed sticker which is attached to each
of these bonds. These bonds were likewise sold in
Texas and in other states. However, the bonds sold
outside of Texas did not carry the printed sticker
above referred to. The Investors Syndicate likewise
construed the trust indenture to secure only those
bonds equal to the withdrawal value of Texas bonds.

"It is my understanding that during this entire
period the Investors Syndicate maintained a general
trust indenture by which it intended to secure bonds
sold in those states which did not require a local
trust indenture, or which required no trust indenture
at all. In other states, as in Texas, where the law
or state authority required a local trust indenture,
the Syndicate executed trust indentures in favor of
local trustees and presumptively intended that the
bonds sold in each of these states would be respect-
ively secured by the trust indenture required by such
states. No trust indenture other than the indenture
executed by the Syndicate in favor of Guardian Trust
Company was ever presented to the Banking Commissioner
of Texas, or ever approved by him. We have no knowl-
edge or information as to the character of collateral
held by the several trustees, nor the amount of col-
lateral. We are advised by the Investors Syndicate
that these trust indentures do exist and that the sum
total of all collateral held by all the trustees is
at least equal to the sum total of withdrawal value
on all bonds sold throughout the United States.

"Your attention is directed to the fact that un-
der the provisions of Senate Bill 165, the Banking

Commissioner is required to approve both the trustee named, the trust indenture, (which, under the law must describe the character of collateral) and the bond to be sold.

"In the light of the above, we respectfully submit the following questions:

"1.   Are bonds of the kind and character originally attached to the trust indenture and sold outside of the State of Texas secured by the trust indenture?

"2.   Are bonds of the character shown in Exhibits A, B. C. D, and E, which were sold by the Investors Syndicate outside of the State of Texas, secured by the Trust indenture?

#3.   Are bonds of the character shown as Exhibits F, G. & H, not bearing the printed sticker and sold outside of the State of Texas secured by this trust indenture?

"4.   If, in answer to any of the above questions, you have held that any of these bonds sold outside of the State of Texas, are secured by this trust indenture, then is the Investors Syndicate complying with the requirement of Texas law by maintaining with the trustee collateral of a value equal to the withdrawal value of the bonds secured by the trust indenture?

"5.   If you have held that the Investors Syndicate is not complying with provisions of Texas law, in that it is not maintaining adequate collateral under the trust indenture, may the Investors Syndicate legally collect future installments on bonds heretofore sold in Texas and not outstanding in the hands of Texas investors?

"6.   If you have held that the Investors Syndicate cannot legally collect future installments on its bonds, as contemplated in Question 5 above, is it the duty of the Banking Commissioner to prohibit the collection of such future installments until such time as the Investors Syndicate has deposited collateral with the trustee equal to the withdrawal value of bonds outstanding and secured by trust indenture?"

Senate Bill 165, Acts of the 42nd Legislature, thereafter amended, and now known as Article 1524a of the Revised Civil

Statutes is a comprehensive act for the supervision and regulation of corporations, both domestic and foreign, dealing in the business of loaning money and dealing in bonds and securities, without banking and discounting privileges.  Section 7 thereof, with which we are here concerned, reads in part:

> "All bonds, notes, certificates, debentures, or other obligations sold in Texas by any corporation affected by a provision of this Act shall be _secured by securities of the reasonable market value, equaling at least at all times the face value of such bonds, notes, certificates, debentures or other obligations._  If such corporation sells in Texas bonds, notes, certificates, debentures or other obligations upon which it receives installment payments, such bonds, notes, certificates, debentures and other obligations _shall be secured at all times by securities having the reasonable market value equal to the withdrawal or cancellation value of such obligations outstanding._  Said securities shall be placed in the hands of a corporation having trust powers approved by the Banking Commissioner of Texas as Trustee under a trust agreement, the terms of which shall be approved in writing by the Banking Commissioner of Texas, or at the option of any such corporation which sells in Texas bonds, notes, certificates, debentures or other obligations upon which it receives installment payments, such corporation may upon application to, and approval by, the Banking Commissioner of Texas deposit securities having a reasonable market value equal to the withdrawal or cancellation value of such obligations outstanding with the State Treasurer of Texas in lieu of such deposits with a Trustee as set forth hereinabove, . . ."  (Underscoring ours)

We are not called upon and consequently do not pass upon the question of whether or not the statute within itself is sufficient to create a lien upon the funds required to be deposited thereunder in favor of Texas purchasers of bonds or certificates.  This necessity is eliminated by the fact that the determination of such question rests upon construction of a contract and not upon statute.

After the passage of such act Investors Syndicate made and entered into a trust agreement pursuant to the authority contained in the above quoted section.  The agreement, dated January 19, 1932, between Investors Syndicate as the party of the first part and Guardian Trust Company as trustee is a third party beneficiary contract, the beneficiaries being the purchasers of bonds secured under the terms of such contract.  We must look therefore to the contract for the creation and existence of the

lien granted in favor of creditors by virtue of their acquisition of bonds or certificates and for the determination of what creditors are secured thereby.

The trust agreement consists of 18 pages and because of the disposition to be made of the questions before us we do not deem it necessary to here set out the terms of such indenture. We are not requested to, and do not pass upon the question of whether or not such indenture adequately describes the character of collateral deposited with the trustee as required under the terms of Senate Bill 165. Suffice it to say that the indenture is vague, indefinite and uncertain in many respects. We believe, however, that the certified copy of the resolution of the Board of Directors of Investors Syndicate attached to and made a part of the trust agreement negatives the possibility that the funds deposited thereunder can stand as security for any other than Texas purchasers.

The second paragraph of the trust agreement reads in part:

"WHEREAS, the Company has determined for its corporate purposes to execute, issue and sell, its Bonds, as provided for hereunder, and to secure the same as herein provided, and has full corporate power and authority so to execute, issue, sell and secure the same, and the execution of this instrument has been fully authorized by the Board of Directors of the Company, a certified copy of the resolution or order, authorizing its execution is hereto attached and made a part hereof, . . ."

The resolution referred to in the paragraph next hereinabove reads:

"RESOLVED, that the Board of Directors hereby authorizes the execution of a collateral trust agreement dated January 19, 1932, between Investors Syndicate and the Guardian Trust Company of Houston, Texas, covering the deposit of securities for the benefit of purchasers of Investors Syndicate Certificates in Texas subsequent to May 22, 1931, and E. E. Grabb, Vice President and E. M. Richardson, Secretary, are hereby authorized to execute said trust agreement on behalf of Investors Syndicate." (Underscoring ours)

The words "deposit of securities for the benefit of purchasers of . . . Certificates in Texas" are a definite and express limitation of the deposit as security for those bonds sold in Texas. No citation of authorities is required to support the principle of law that an exhibit attached to an agreement and

expressly made a part thereof by appropriate language constitutes a part of such agreement just as effectively as if set out in full in the body of the agreement.

It necessarily follows therefore that all your questions are disposed of by our conclusion that the trust agreement presented secures Texas purchasers only.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Lloyd Armstrong
Lloyd Armstrong, Assistant

APPROVED FEB 24, 1941
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:        RWF, CHAIRMAN

LA:GO:wb